### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| William Newbern, | : | Case No. 1:10-CV-0396 |
| Plaintiff, | : | |
| v. | : | **M E M O R A N D U M DECISION AND ORDER** |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income (SSI) under Title XVI of the Act. Pending are the parties' Briefs on the Merits (Docket Nos. 16 & 22).  For the reasons that follow, the Commissioner's decision is affirmed.

### I. PROCEDURAL BACKGROUND.

On August 20 and 22, 2007, Plaintiff filed applications for DIB and SSI alleging that he became unable to work because of his disabling condition on May 26, 2007 (Docket No. 11, Exhibit 7, pp. 2-4, 10-13 of 20).  Plaintiff's requests were denied initially and upon reconsideration

(Docket No. 11, Exhibit 5, pp. 4-6; 7-9; 10-12; 14-15; 16-19; 20-22 of 31). Plaintiff filed a timely request for hearing and on September 28, 2009, Administrative Law Judge (ALJ) Penny Loucas held a hearing at which Plaintiff, represented by counsel, and Vocational Expert (VE) James Parker attended and testified (Docket No. 11, Exhibit 3, p. 2). On October 26, 2009, the ALJ rendered an unfavorable decision denying applications for a period of disability, SSI and DIB (Docket No. 11, Exhibit 2, p. 9-17). On January 23, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Docket No. 11, Exhibit 2, pp. 2-4). Plaintiff filed a timely Complaint in this Court seeking judicial review (Docket No. 1).

## II. FACTUAL BACKGROUND.

A. **PLAINTIFF'S TESTIMONY**.

Plaintiff lived alone and his rent was subsidized through the Metropolitan Housing Authority, an organization that provides low income housing. Plaintiff had a medical card and he received $115 per month in food stamps. Plaintiff's mother supplemented his care by providing financial support and cooking his meals (Docket No. 11, Exhibit 3, pp. 12, 14).

Plaintiff could no longer work as he had a surgically implanted plate in his left arm, his left thumb did not work and he had a cyst on his elbow (Docket No. 11, Exhibit 3, pp. 5-6). When working, Plaintiff had a preference for the left hand over the right; however, his ability to use his left hand was affected by nerve damage to his left thumb. Consequently, Plaintiff wrote and lifted with his right hand. During the hearing, Plaintiff was unable to bring his hands to his chest. He explained that numbness in his left thumb affected his ability to grasp (Docket No. 11, Exhibit 3, pp. 6-7, 10). Plaintiff had surgery on his left hand in 1999 (Docket No. 11, Exhibit 3, p. 8).

While working, Plaintiff injured his elbow by constantly picking up heavy parts and throwing them into tubs. The x-ray showed the presence of a cyst. The swelling in Plaintiff's arm was exacerbated by overuse. His physician administered an injection designed to reduce the swelling (Docket No. 11, Exhibit 3, pp. 7-8).

In 2004, Plaintiff aggravated a back injury. The attending physician opined that Plaintiff had ruptured a couple of discs. Because Plaintiff had a pre-existing back injury for which he failed to pursue a worker's compensation claim, he was foreclosed from seeking worker's compensation benefits for his second injury (Docket No. 11 Exhibit 3, p. 9).

Plaintiff took Zoloft for depression. The side effects of the medication included lethargy and drowsiness (Docket No. 11, Exhibit 3, p. 14). Plaintiff was prescribed Tylenol # 3 and muscle relaxers for the pain arising from his back and elbow injuries. In addition he used hot and cold packs (Docket No. 11, Exhibit 3, p. 17).

Plaintiff demonstrated that he could make a fist with his right hand and that he could raise his right arm over his head (Docket No. 11, Exhibit 3, p. 16). It was difficult for him to sit or stand. He could, however, sit for approximately forty minutes, stand for approximately twenty-five minutes and he could walk until his feet swelled or became numb (Docket No. 11, Exhibit 3, pp. 17-18).

During a typical day, Plaintiff went to his mother's house in the morning and assisted her with household chores such as gardening. Occasionally, Plaintiff's adult sons would visit him. Plaintiff accompanied them and watched while they played basketball. After playing basketball, Plaintiff's sons joined him in watching television (Docket No. 11, Exhibit 3, p. 15). Plaintiff drove

only when accompanying his mother or uncle to an appointment or shopping (Docket No. 11, Exhibit 3, pp. 13-14).

**B.    VE TESTIMONY.**

The ALJ affirmed that the opinions given were consistent with the DICTIONARY OF OCCUPATIONAL TITLES, its companion volume of job classifications and the Social Security Administration's rules and regulations.

The VE responded to the ALJ's hypothetical questions that consisted of a hypothetical individual with Plaintiff's education, training and work experience, who, without mental limitation, could lift twenty pounds occasionally, ten pounds frequently, sit/stand/walk a maximum of six hours in a given day and occasionally balance (Docket No. 11, Exhibit 3, pp. 21, 22). This hypothetical person could not perform Plaintiff's past relevant work which was considered heavy labor (Docket No. 11, Exhibit 3, pp. 19-20, 22). This hypothetical person could perform the following jobs that were available as follows:

| JOB TITLE | NATIONALLY | LOCALLY |
| --- | --- | --- |
| ASSEMBLER | 750,000 | 5,000 |
| PARKING LOT ATTENDANT | 500,000 | 6,000 |
| ELECTRONIC WORKER | 720,000 | 2,500 |

(Docket No. 11, Exhibit 3, p. 22-23).

Incorporating the first hypothetical plaintiff and adding a limitation that the non-dominant hand was limited to occasional handling and the dominant hand could be used without limitation, the ALJ responded that these jobs would be available nationally and locally in the numbers that follow:

4

| JOB TITLE | NATIONALLY | LOCALLY |
|---|---|---|
| RECREATION ATTENDANT | 400,000 | 1,400 |
| BOTTLE LABEL INSPECTOR | 200,000 | 1,300 |
| PARKING LOT ATTENDANT | 500,000 | 6,000 |

(Docket No. 11, Exhibit 3, pp. 24-25).

Incorporating the characteristics of the first and second hypothetical plaintiffs and adding to the third hypothetical, limitations in the ability to follow simple instructions, perform simple, repetitive work tasks, comprehend and complete simple routine tasks, no significant impairment in the ability to comprehend or to remember, a moderate impairment in the ability to maintain attention, concentration, pace and perform simple repetitive tasks and a moderate limitation in stress tolerance, the VE claimed that the following jobs would be available:

| JOBS | NATIONALLY | LOCALLY |
|---|---|---|
| PARKING LOT ATTENDANT | 500,000 | 6,000 |
| RECREATION ATTENDANT | 400,000 | 1,400 |
| LAUNDRY SORTER | 400,000 | 3,000 |

(Docket No. 11, Exhibit 3, p. 26).

If the hypothetical plaintiff had no other impairments except that the left hand was considered non-dominant, the following jobs would be available to accommodate him:

| JOBS | NATIONALLY | LOCAL |
|---|---|---|
| MAIL INFORMATION CLERK | 200,000 | 800 |
| SURVEILLANCE MONITOR | 110,000 | 500 |

(Docket No. 11, Exhibit 3, p. 28).

If the side effects of the hypothetical included symptoms that would cause the plaintiff to be off task more than 10%, it would be highly problematic to retain any employment in any setting

5

(Docket No. 11, Exhibit 3, p. 30).

### III. MEDICAL EVIDENCE.

Plaintiff fell on May 2, 1999 going up the stairs and injured his left wrist. After several days, he suffered severe pain, swelling and numbness. Dr. Bruce S. Kay, M. D., performed an open reduction, internal and external fixation to Plaintiff's left wrist on May 7, 1999 (Docket No. 11, Exhibit 14, pp. 7-15).

Results from the magnetic resonance imaging (MRI) of Plaintiff's lumbosacral spine taken on August 5, 2003, showed evidence of degenerative disc changes at L4-L5 and L5-S1. There was no evidence of spinal canal stenosis or herniation (Docket No. 11, Exhibit 9, p. 2). Compared to another MRI of Plaintiff's lumbar spine taken on April 27, 2004, Plaintiff had developed a large disc herniation at L5-S1 (Docket No. 11, Exhibit 9, p. 3).

On September 29, 2004, Dr. George A. Southiere, M. D, a MedCentral Health System physician (MedCentral), diagnosed Plaintiff with acute back strain, chronic lumbosacral and radiculopathy. The treatment included an injection of a cocktail of pain relievers (Docket No. 11, Exhibit 11, pp. 13-14).

Plaintiff presented to the MedCentral Emergency Room on February 27, 2004, with complaints of back pain. Dr. G. Mark Seher, D.O., diagnosed Plaintiff with acute exacerbation of chronic back pain and prescribed an anti-inflammatory drug used to treat pain (Docket No. 11, Exhibit 11, pp. 29-30).

On March 7, 2004, Plaintiff presented to the Emergency Room at MedCentral. Dr. Anthony Midkiff, M.D., an emergency room physician, diagnosed Plaintiff with acute exacerbation of chronic back pain. He, too, prescribed pain relievers (Docket No. 11, Exhibit 11, p. 26). On March 19, 2004, Dr. Midkiff diagnosed Plaintiff with acute exacerbation of chronic back pain with

6

intractable pain. A pain reliever was prescribed (Docket No. 11, Exhibit 11, p. 21). On October 31, 2004, Dr. Midkiff diagnosed Plaintiff with acute exacerbation of chronic back pain for which a pain reliever was prescribed (Docket No. 11, Exhibit 11, pp. 5-8).

Dr. James R. Wolfe, M. D., managed Plaintiff's treatment for pain through MedCentral's Pain Clinic for symptoms of left lateral upper tennis elbow and back pain (Docket No. 11, Exhibit 11, p. 17). Plaintiff's condition was stable under Dr. Wolfe's supervision so long as Plaintiff complied with the prescribed drug regimen. Dr. Wolfe injected Plaintiff's left elbow with an anti-inflammatory drug on four occasions (Docket No. 11, Exhibit 10, pp. 2, 12, 21; Exhibit 12, p. 6, 18). On December 21, 2004, Dr. Wolfe initiated the first of three injections to Plaintiff's lumbar spine (Docket No. 11, Exhibit 10, pp. 31, 32, 38). Dr. Wolfe administered a sacroiliac injection on August 15 and again on September 12, 2005 (Docket No. 11, Exhibit 10, pp. 21, 33; Exhibit 9, p. 22).

On January 3, 2006, Plaintiff presented to the Third Street Family Health Services (TSFHS) with complaints of nightmares, sleep disturbances and panic sensations. He was prescribed Lexapro for depression and anxiety disorders (Docket No. 11, Exhibit 13, p. 39). Through January 17, 2008, the symptoms of depression appeared to be controlled provided Plaintiff took his medication (Docket No. 11, Exhibit 13, p. 28-39).

On August 25, 2007, Plaintiff was diagnosed with heel pain and painful inflammation on the bottom of his feet. The X-rays of Plaintiff's left foot showed no injury or disease. The symptoms were treated with the application of ice, elevation and no weight bearing on the left foot (Docket No. 11, Exhibit 12, pp. 25-27).

On October 8, 2007, Dr. William B. Schonberg, Ph. D., a psychologist, conducted a clinical evaluation without diagnostic testing. He diagnosed Plaintiff with a dysthymic disorder, back

7

problems and some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. Plaintiff had some meaningful interpersonal relationships (Docket No. 11, Exhibit 12, p. 32).

Dr. Alice Chambly, Psy. D., opined on November 7, 2007, that Plaintiff's allegations appeared to be credible. Plaintiff had moderate limitations in his ability to:

- carry out detailed instructions,
- complete a normal workday and workweek without interruptions from psychologically based symptoms,
- accept criticism and respond appropriately to criticism from supervisors,
- maintain socially appropriate behavior,
- adhere to the basic standards of neatness and cleanliness, and
- respond appropriately to changes in the work setting.

(Docket No. 11, Exhibit 12, pp. 35-37).

Dr. Chambly diagnosed Plaintiff with a dysthymic disorder. As a result of this disorder, Dr. Chambly opined that Plaintiff had the following functional limitations.

- mild restriction in activities of daily living,
- moderate difficulties in maintaining social functioning,
- moderate difficulties in maintaining concentration, persistence or pace, and
- no episodes of decompensation.

(Docket No. 11, Exhibit 13, pp. 5, 12).

Dr. Jerry McCloud, M.D., opined on November 9, 2007, that Plaintiff could:

- occasionally lift and/or carry twenty pounds,
- frequently lift and /or carry ten pounds.
- stand and/or walk about six hours in an eight-hour workday,
- sit about six hours in an eight-hour workday,
- push and/or pull on an unlimited basis, and
- occasionally climb using a ladder/rope/scaffold.

There was no evidence of communicative, environmental or visual limitations (Docket No. 11, Exhibit 13, pp. 17-21).

Dr. John Chuang referred Plaintiff to the behavioral health unit at TSFHS. There, Ms.

Colleen Shaughency, a licensed social worker, conducted a diagnostic assessment on March 6, 2009. Ms. Shaughency created a plan to improve Plaintiff's assertiveness, reduce stress and address anger management (Docket No. 11, Exhibit 15, p. 12).

On June 23, 2009, Dr. John Chuang completed a medical source statement during which he diagnosed Plaintiff with chronic major depression. He opined, *inter alia*, that Plaintiff had a poor ability to:

- maintain attention and concentration for extended periods of two-hour segments,
- maintain regular attendance and be punctual within customary tolerance,
- work in coordination with or proximity to others without being unduly distracted or distracting,
- deal with work stresses,
- complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and
- management of funds and schedules.

(Docket No. 11, Exhibit 14, pp. 20-21).

On June 24, 2009, Dr. Chuang met with Plaintiff so that he could complete the "social security papers." Dr. Chuang examined Plaintiff's medical history, his physical and mental systems and diagnosed Plaintiff with chronic major depression. Plaintiff expressed to Dr. Chuang that he was unmedicated, that he was feeling depressed, that he had multiple stressors including financial and personal and that he had suicidal thoughts occasionally. Dr. Chuang prescribed an antidepressant forthwith (Docket No. 11, Exhibit 15, pp. 13-16).

Dr. Wolfe saw Plaintiff on June 11, 2009, and noted that most of Plaintiff's symptoms were distal. Plaintiff's elbow was okay (Docket No. 11, Exhibit 15, p. 2).

### IV. STEPS TO SHOWING ENTITLEMENT TO SOCIAL SECURITY BENEFITS.

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)).

9

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)). The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time her or she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. *Id.* A "severe impairment" is one which "significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id*.

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id*. (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534

(6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id*. (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

### V. THE ALJ'S FINDINGS.

Upon consideration of the evidence, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2009. Plaintiff had not engaged in substantial gainful activity since May 26, 2007, the alleged onset date of his impairment.

2. Plaintiff had the following severe impairments: left lateral epicondylitis (tennis elbow), degenerative disc disease and depression. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1.

3. Plaintiff had the residual functional capacity for light work except no more than occasional balancing or handling with the non-dominant hand, ability to perform simple routine or repetitive tasks with mild limitation in the ability to remember and follow simple instructions, with moderate limitation in the ability to maintain attention, concentration and pace and moderate limitation in the ability to handle stress associated with day-to-day activities.

4. Plaintiff was unable to perform any past relevant work. However, Plaintiff could perform jobs that existed in significant numbers in the national economy.

5. Plaintiff was not disabled as defined in the Act.

(Docket No. 11, Exhibit 2, pp. 9-17).

### VI. STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision of the Commissioner. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir.

2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

Plaintiff argues that:

12

1. The ALJ erred in failing to give substantial weight to the opinions of the treating physician.

2. The ALJ erred in her determination of Plaintiff's residual functional capacity.

Defendant argues that:

1. The ALJ reasonably evaluated the opinion evidence of Plaintiff's mental impairment.

2. There is substantial evidence supporting the ALJ's physical residual functional capacity finding.

**1. DID THE ALJ ERR IN ATTRIBUTING LESS WEIGHT TO DR. CHUANG'S OPINIONS?**

Plaintiff claims that Dr. Chuang completed a medical source statement on June 23, 2009, in which he claimed that Plaintiff's functional and cognitive abilities were poor. The ALJ erred in failing to attribute controlling weight to these opinions and instead, attributed more weight to the opinion of the state agency physician.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. *McCombs v. Commissioner of Social Security,* 2010 WL 3860574, *6 (S. D. Ohio) (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). The applicable regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of the claimant's impairment(s), including symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Id.* (*citing* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Some opinions, such as those from examining and treating physicians, are normally entitled to greater weight. *Id.* (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)).

To qualify as a treating source, the acceptable medical source must have examined the

claimant and engaged in an ongoing treatment relationship with the claimant consistent with accepted medical practices. *Id.* (*citing Smith v. Commissioner of Social Security,* 482 F.3d 873, 875 (6th Cir. 2007) (*quoting* 20 C.F.R. § 404.1502)). The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances. *Cross v. Commissioner of Social Security*, 373 F. Supp.2d 724, 729 -730 (N. D. Ohio 2005). Generally, more weight is attributed to treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight. *Id.* (*citing* 20 C. F. R. § 404. 1527(d)(2)).

The medical evidence in this case showed that Dr. Chuang completed a medical source document in which he speculated about Plaintiff's functional limitations. On the following day, Dr. Chuang assisted Plaintiff with the completion of the medical records by conducting a clinical interview. The record shows that the opinions expressed by Dr. Chuang were based solely on the subjective complaints of Plaintiff during this visit. There is no evidence of a relationship between Plaintiff and Dr. Chuang outside this visit. Furthermore, Dr. Chaung's medical notes were not supported by medically acceptable clinical and laboratory diagnostic techniques. This limited relationship alone creates ambiguity as to whether Dr. Chuang was a treating source. Nevertheless,

the limited relationship and lack of medical records warrants a finding that Dr. Chuang's opinions are not entitled to controlling weight. Under these circumstances, it was within the ALJ's province to attribute little weight to Dr. Chuang's opinions.

In the alternative, Plaintiff contends that the ALJ erred by giving more weight to Dr. Schonberg's opinions than the opinions of Dr. Chuang. A consultative examiner, Dr. Schonberg examined Plaintiff once.

Because state agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 C. F. R. 404.1527(f) and 416.927(f) require the ALJ and Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of non-examining physicians and psychologists. TITLE II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT, SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996). ALJs and the Appeals Council are not bound by findings made by state agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions. *Id.*

The fact finder was required to consider Dr. Schonberg's opinion, give appropriate weight to the opinions and then explain the weight given to the opinions. In the instant case, the ALJ reviewed Dr. Schonberg's report and gave it significant weight as it was an objective overview of the cumulative evidence. The ALJ also explained the weight given to Dr. Schonberg's reports (Docket No. 11, Exhibit 2, p. 15). Since the ALJ made her determination relying upon the correct legal standards and based her findings on substantial evidence in the record as a whole, the ALJ's treatment of the state agency report will be upheld.

**2.   DID THE ALJ ERR IN HER DETERMINATION OF PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY?**

Plaintiff contends that the ALJ failed to accurately reflect his physical and mental residual functional capacities. Specifically, the medical record supports a more restrictive residual functional capacity than what the ALJ determined. Plaintiff further argues that the ALJ undervalued the presence of a large disc herniation, chronic back pain, tenderness at the paraspinal muscles and continued complaints of elbow, hand and wrist pain and the effect of these impairments on his ability to sit/stand/walk, bend, lift, handle and manipulate.

The regulations charge the ALJ with the responsibility for deciding a claimant's residual functional capacity when cases are decided at an administrative hearing. *Converse v. Astrue,* 2009 WL 2382991, *8 (S. D. Ohio 2009) (*citing Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004) (citations omitted); 20 C.F.R. §§ 404.1546; 404 .1527(e)(2)). A claimant's residual functional capacity is an assessment of physical and mental work abilities-what the individual can or cannot do despite his or her limitations. *Id.* (*citing* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002)). The Commissioner explains through his rulings that residual functional capacity is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* The regulations deem the terms "regular and continuing basis" to mean "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* (*citing* SSR 96-8p; *See* http://www.ssa.gov/OPHome/rulings/rulings.html (emphasis in original)).

In assessing residual functional capacity, the regulations distinguish residual functional capacity and a medical source opinion about claimant's work abilities. *Id.* Residual functional capacity "is an administrative assessment of the extent to which an individual's medically

16

determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* (*citing* SSR 96-8p).

Plaintiff contends that the ALJ did not take into account the actual physical maladies of large disc herniation, chronic back pain, tenderness at the paraspinal muscles and elbow, hand and wrist pain in assessing residual functional capacity. These assertions constitute a list of what Plaintiff suffers from. These assertions do not assess what Plaintiff can or cannot do. In assessing residual functional capacity, the ALJ reviewed the disc degeneration and its symptoms in assessing functional limitations on Plaintiff's ability to stand/walk, bend and lift. The ALJ assessed Plaintiff's mental impairment in assessing whether Plaintiff could undertake the basic mental demands of competitive employment. Similarly, the ALJ analyzed Plaintiff's use of his hands/wrists/elbows in assessing Plaintiff's ability to manipulate and lift (Docket No. 11, Exhibit 2, pp. 13-16). The ALJ properly considered the effects of Plaintiff's physical impairments in assessing what work Plaintiff was capable of performing. Contrary to Plaintiff's assertions, the ALJ properly incorporated those limitations imposed by Plaintiff's back, hand, wrist and mental impairments into the residual functional capacity. On review of the record, the Magistrate finds that substantial evidence supports the ALJ"s conclusions.

### VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date:   March 28, 2011